James L. Sanders (SBN 126291)
E-mail: jsanders@reedsmith.com
Stuart A. Shanus (SBN 188046)
E-mail: sshanus@reedsmith.com
Michael A. Garabed (SBN 223511)
E-mail: mgarabed@reedsmith.com
REED SMITH LLP
1901 Avenue of the Stars, Suite 700
Los Angeles, CA 90067-6078
Telephone: +1 310.734.5200
Facsimile: +1 310.734.5299

Attorneys for Defendants and
Counterclaimants Kyphon Sàrl and
Medtronic, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABBAN DEVELOPMENT, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>KYPHON SÀRL, MEDTRONIC, INC., AND DOES 1-100,<br><br>Defendants.<br><br>KYPHON SÀRL and MEDTRONIC, INC.,<br><br>Counterclaimants,<br><br>vs.<br><br>PABBAN DEVELOPMENT, INC., BIO-MEDICAL DEVICES, INC., BIO-MEDICAL DEVICES INTERNATIONAL, INC., and HARRY N. HERBERT,<br><br>Counterdefendants. | No.: SACV 10-533 BRO (RNBx)<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT AND COUNTERCLAIMANT KYPHON SARL FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 50(b) OR, IN THE ALTERNATIVE, FOR A NEW TRIAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: June 30, 2014<br>Time: 1:30 p.m.<br>Place: Courtroom 14<br><br>Honorable Beverly Reid O'Connell |


TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 1:30 p.m. on June 30, 2014, or as soon thereafter as the motion may be heard in the above-entitled court, Defendant and Counterclaimant Kyphon Sàrl ("Kyphon") will and hereby does move the Court for judgment in its favor pursuant to Federal Rule of Civil Procedure 50(b) or, in the alternative, for a new trial pursuant to Federal Rule of Civil Procedure 59. This motion is brought following the denial of Kyphon's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). *See* Trial Tr. at 1020:22-1024:11.

This motion is based on this notice, the memorandum of points and authorities attached hereto, the evidence introduced at trial, the pleadings and papers on file in this matter, and such other evidence and argument that the Court may permit.

DATED: June 2, 2014.      REED SMITH LLP

By   /s/ Michael Garabed
James L. Sanders
Stuart A. Shanus
Michael A. Garabed
Attorneys for Defendants and
Counterclaimants Kyphon Sàrl and
Medtronic, Inc.

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................................ 1

II. LEGAL STANDARD ......................................................................................... 1

III. ARGUMENT ...................................................................................................... 1

    A.  There Was No Reasonable Basis For The Jury To Find That Pabban Satisfied The Warranty Provisions Of The APA ........................... 1

    B.  There Was No Basis To Award Pabban Future Royalties ........................ 7

    C.  If The Court Does Not Grant JMOL, A New Trial Should Be Ordered .................................................................................................... 9

IV. CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Barnard v. Theobald*,
  721 F.3d 1069 (9th Cir. 2013) ............................................................................ 1

*Bonanza Restaurant Co. v. Wink*,
  2012 WL 1415512 (Del. Super. April 12, 2012) ........................................... 9, 10

*Cobalt Operating, LLC v. James Crystal Enterprises, LLC*,
  2007 WL 2142926 (Del. Ch. 2007) .................................................................... 3

*DCV Holdings, Inc. v. Conagra, Inc.*,
  2005 WL 698133 (Del. Super. March 24, 2005) ............................................... 4

*Donald M. Durkin Contracting, Inc. v. City of Newark*,
  2008 WL 952984 (D. Del. April 9, 2008) .......................................................... 9

*E.E.O.C. v. Go Daddy Software, Inc.*,
  581 F.3d 951 (9th Cir. 2009) .............................................................................. 1

*Henne v. Balick*,
  146 A.2d 394 (Del. 1958) ............................................................................ 9, 11

*Hudson's Bay Co. Lux., S.A.R.L. v. JZ LLC*,
  2011 WL 3082339 (Del. Super. July 26, 2011) ................................................. 3

*In re Applin*,
  108 B.R. 253 (E.D. Cal. 1989) ........................................................................... 7

*Interim Healthcare, Inc. v. Spherion Corp.*,
  884 A.2d 513 (Del. Super. 2005) ....................................................................... 3

*Ivize of Milwaukee, LLC v Compex Litig. Support, LLC*,
  2009 WL 1111179 (Del. Ch. Apr. 27, 2009) ..................................................... 4

*Jorgensen v. Cassiday*,
  320 F.3d 906 (9th Cir. 2003) .............................................................................. 2

*Josephs v. Pac. Bell*,
  443 F.3d 1050 (9th Cir. 2005) ............................................................................ 1

*Krechman v. Cnty. of Riverside*,
  723 F.3d 1104 (9th Cir. 2013) ............................................................................ 2

*Landes Const. Co., Inc. v. Royal Bank of Canada*,
  833 F.2d 1365 (9th Cir. 1987) .......................................................................... 12

*Mobile Diagnostics, Inc. v. Lindell Radiology, P.A.*,
  1985 WL 189018 (Del. Super. July 29, 1985) ................................................... 8

*Molski v. M.J. Cable, Inc.*,
  481 F.3d 724 (9th Cir. 2007) ............................................................................ 11

*Murphy v. City of Long Beach*,
  914 F.2d 183 (9th Cir. 1990) ............................................................................ 12

*Passantino v. Johnson & Johnson Consumer Prods.*,
  212 F.3d 493 (9th Cir. 2000) ............................................................................ 11

*Re v. Gannett Co., Inc.*,
  480 A.2d 662 (Del. Super. 1984) ....................................................................... 8

*Totten v. Merkle*,
  137 F.3d 1172 (9th Cir. 1998) ............................................................................ 7

MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 50(b),
OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

*Tridon Industries, Inc. v. Willis Chevrolet, Inc.*,
 2014 WL 1338678 (D. Del. April 1, 2014) ............................................................... 9

*Williams v. Union Carbide Corp.*,
 790 F.2d 552 (6th Cir. 1986) ................................................................................... 7

**Rules**

Fed. R. Civ. P. 50(a) .................................................................................................. 1, 10

Fed. R. Civ. P. 50(a)(1) ..................................................................................................... 1

Fed. R. Civ. P. 50(b) .................................................................................................... 1, 8

Fed. R. Evid. 403 ............................................................................................................. 7

Fed. R. Evid. 801(d)(2) ..................................................................................................... 7

**Other Authorities**

DEL. P.J.I. CIV. § 19.20 (2000) ....................................................................................... 2

DEL. P.J.I. CIV. § 22.24 (2000) ....................................................................................... 8

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# I. INTRODUCTION

Kyphon moved for judgment as a matter of law ("JMOL") under Rule 50(a) at the close of evidence and before the case was submitted to the jury. Specifically, Kyphon moved for JMOL under Rule 50(a) on two separate grounds: (1) the evidence demonstrated Pabban did not satisfy the warranty provisions of the APA; and (2) Pabban's claim for future royalties was speculative and barred by Section 2.7 of the APA. *See* Trial Tr. at 1020:22-1024:11. The Court denied the motion in its entirety. Accordingly, Kyphon hereby renews each of those grounds and requests that the Court enter judgment as set forth below.

Alternatively, Kyphon requests that the Court order a new trial because the verdict with respect to Kyphon is contrary to the clear weight of the evidence.

# II. LEGAL STANDARD

JMOL is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a)(1). On a properly made motion under Rule 50(b), the district court reviews a jury's verdict for substantial evidence. *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). The test applied is "whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Barnard v. Theobald*, 721 F.3d 1069, 1075 (9th Cir. 2013) (quoting *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2005)). In other words, JMOL should be granted where "there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Krechman v. Cnty. of Riverside*, 723 F.3d 1104, 1109-10 (9th Cir. 2013) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 917 (9th Cir. 2003)).

# III. ARGUMENT

### A. There Was No Reasonable Basis For The Jury To Find That Pabban Satisfied The Warranty Provisions Of The APA

JMOL is warranted here because the evidence at trial established that

- 1 -

Pabban did not satisfy the warranty provisions in the APA. As a result, judgment should be entered in favor of Kyphon on Pabban's breach of contract claim.

To succeed on its breach of contract claim, Pabban was required prove by a preponderance of the evidence that Kyphon breached the APA. *See* DEL. P.J.I. CIV. § 19.20 (2000). To establish that claim, Pabban had to demonstrate that it performed all of its obligations under the APA and that Kyphon failed to perform its obligations under that contract. Pabban was also required to prove that Kyphon's breach caused Pabban to suffer damages.

It is undisputed that Kyphon's obligations were contingent on Pabban's compliance with its representations and warranties in the APA. One of the representations and warranties Pabban provided to Kyphon was:

> To Seller's Knowledge, the Natrix System as presently designed and configured, and when manufactured in accordance with the Manufacturing Documentation, will materially conform to the specifications established therefor and to Seller's Knowledge will be (a) of merchantable quality; (b) free from defects in design, material and workmanship; and (c) suitable for their intended and labeled purpose. [Ex. 31, § 3.16.]

Pabban also represented and warranted that:

> The Purchased Assets (other than the Retained Assets or the Business Intellectual Property) are suitable for the uses for which they are presently used by Seller, in normal operating condition and free from any significant defects, ordinary wear and tear excepted. [Ex. 31, § 3.9.]

These warranties allocate to Pabban the risk that the Natrix Device was not ready for commercial sale, regardless of what Kyphon knew or should have known at the time it signed the APA. *See*, *e.g.*, *Hudson's Bay Co. Lux., S.A.R.L. v. JZ LLC*, 2011 WL 3082339, at *2 (Del. Super. July 26, 2011); *Interim Healthcare, Inc. v.*

*Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. 2005) ("To the extent [defendant] warranted a fact or circumstance to be true in the Agreement, plaintiffs were entitled to rely upon the accuracy of the representation . . . In this regard, [defendant] accepted the risk of loss to the full extent of its indemnification commitments in the event its covenants were breached."); *Cobalt Operating, LLC v. James Crystal Enterprises, LLC*, 2007 WL 2142926, at * 28 (Del. Ch. 2007) ("Having contractually promised [plaintiff] that it could rely on certain representations, [defendant] is in no position to contend that [plaintiff] was unreasonable in relying on [plaintiff's] own binding words.").

As explained in *Ivize of Milwaukee, LLC v Compex Litig. Support, LLC*, 2009 WL 1111179 (Del. Ch. Apr. 27, 2009), a contractual representation "must be true at the time it is made to avoid breach, regardless of who knew whether the representation was true or not." In *Ivize*, along with similar cases interpreting Delaware law, representations and warranties about a seller's knowledge are broadly construed unless specifically limited by a qualifier of "to the best of seller's knowledge." *See Id.* And even where representations are so qualified, the duty of inquiry on behalf of the individuals making the warranties remains. *See*, *e.g.*, *DCV Holdings, Inc. v. Conagra, Inc.*, 2005 WL 698133, at * 10 (Del. Super. March 24, 2005) (noting the phrase "knowledge of Sellers" was intended to mean "only what Halter and James knew **_with an obligation on their part to make due inquiry_**." (emphasis added)).

Here, the APA defines "Knowledge" to be "actual knowledge of the Key Personnel" and the "Key Personnel" are defined as Harry N. Herbert (Nick Herbert), Lawrence Green, and Bill Stark. [Ex. 31 at pp. 4, 35.] On February 14, 2014, the Court interpreted the phrase "merchantable quality" in Section 3.16 of the APA to mean "of good enough quality to be sold." Therefore, the key question is whether there was evidence that Nick Herbert, Larry Green, and Bill Stark each knew that the Natrix Device was "of good enough quality to be sold" as of August 7, 2008.

MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 50(b),
OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

Importantly, the Court instructed the jury that if any *one* of the three key personnel (Nick Herbert, Bill Stark, *or* Larry Green) knew the Natrix System was not of good enough quality to be sold, then they *must* find that Pabban breached Section 3.16 of the Asset Purchase Agreement. [Trial Tr. at 1039:15-20.] The verdict against Kyphon is inconsistent with the evidence on that issue and defies the Court's instruction.

Specifically, the testimony from the three "Key Personnel" confirms that the device was not ready for commercial sale on August 7, 2008. For example, Nick Herbert admitted under cross-examination that the Natrix System was *not* "of good enough quality to be sold" at the time he signed the APA:

> Q. Is it true, sir, that the Natrix product was not ready to sell to customers at the time you sold it? And by that I mean physicians, doctors?
> A. You mean commerciable?
> Q. Yes.
> A. It couldn't be, no.
> Q. And you were aware of that when you signed the contract?
> A. Yes...
>
> [Trial Tr. at 221:21-222:3]

Moreover, Larry Green, the engineer who invented the device, admitted that he had no idea whether the Natrix Device was good enough to be sold at the time Pabban sold the Natrix Device to Kyphon. In fact, Mr. Green admitted that he had no idea if the device was even ready to be used on patients, let alone commercially sold:

> Q. So you had no idea that the Natrix device -- at the time the Asset Purchase Agreement was closed, you had no idea whether it could be used on patients; correct?
> A. Correct.
>
> [Trial Tr. at 308:12-15]

MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 50(b),
OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

Bill Stark's testimony further demonstrates that the device was not ready for commercial sale on August 7, 2008. Specifically, Mr. Stark admitted that the product must meet a certain reliability criteria to be sold commercially, and that at the time of the APA, he had no data to establish the device met the requisite threshold:

> Q. And here you wrote, "There is a requirement that states that out-of-the-box reliability must be greater than or equal to 99.5 percent." Did I read that correctly?
> A. That is correct.
> Q. And then you write, "I do not have any data that would support this claim, and based upon our testing in the field, I believe we are below the minimum percentage specified." Do you see that?
> A. I do see that.
> Q. And that was what was required before you could manufacture these devices for commercial sale, right?
> A. We would expect a 99.5 percent failure rate when we're selling them commercially.
>
> [Trial Tr. at 392:12-25]

This evidence, together with the Court's interpretation of the APA and the integrated Supply Agreement, demonstrates that Pabban breached its contractual promise that the Natrix System would be suitable for commercial sale. Specifically, in the Supply Agreement executed concurrently with the APA, the parties contracted for the manufacture and delivery of hundreds of devices to Kyphon within days of August 7, 2008. *See* Ex. 145. As Pabban's witnesses testified, those devices could not be sold commercially because they did not meet the necessary failure rate threshold and did not have validated packaging, among other things.

Even Pabban's own attorney, Joseph Thomas, admitted the Natrix System could not be legally sold as of August 7, 2008:

- 5 -

> Well, this is why these schedules become very important because – it's undisputed by both sides, Your Honor, that this – this medical device, it's a Class I FDA device. It cannot be sold or used until you pass a packaging validation testing. Okay? At the time of the sale of this – which I think was August 7th, 2008, was the closing of this – this device had not passed a packaging validation test. Okay?
>
> By definition, this product could not be sold to a customer. Could it be sold to and delivered to Medtronic? Yes. But could it be sold into the marketplace for use by a customer? The answer is no.
>
> [January 22, 2014 Reporter's Transcript at 13:6-17.][1]

Pabban's expert also agreed. Specifically, Richard Meyst testified that the device was <u>not</u> merchantable and could <u>not</u> be legally sold as of August 7, 2008 because validations were incomplete:

> Q. Okay. Let me ask you just a basic question then. In this case, as of the close of the APA, August 7th, 2008, validations of the Natrix System were not complete, correct?
> A. That's correct.
> Q. And you can't legally sell a medical device when validations are incomplete, correct?
> A. Correct.
> Q. In other words, you wouldn't have sold the Natrix device to a hospital as of August 7th, 2008?
> A. That's right.
> [Trial Tr. at 618:24-619:8]

---

[1] Although the Court prevented Kyphon from introducing these statements at trial under FRE 403, they are admissions of fact that warrant judgment as a matter of law. *See* Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998) ("Under the federal rules, a statement made by an attorney is generally admissible against the client."); *see also* Williams v. Union Carbide Corp., 790 F.2d 552, 556 (6th Cir. 1986) (noting an attorney's statements are "substantive evidence under Federal Rule of Evidence 801(d)(2)"); *In re Applin*, 108 B.R. 253, 259 (E.D. Cal. 1989) (noting "a statement by one's attorney is frequently an admission by a party-opponent under FRE 801(d)(2)").

In other words, based on the evidence introduced at trial, there is no question that Pabban failed to satisfy its warranty obligations under the APA. As a result, Pabban failed to establish all of the elements of its breach of contract claim and judgment should be entered in Kyphon's favor pursuant to Rule 50(b).

## B. There Was No Basis To Award Pabban Future Royalties

The measure of damages for breach of contract is the loss the party actually suffered as a result of the other party's failure to comply with the contract. DEL. P.J.I. CIV. § 22.24 (2000). Under Delaware law, future losses must be established by "substantial evidence" and not by speculation. *Mobile Diagnostics, Inc. v. Lindell Radiology, P.A.*, 1985 WL 189018, at *4 (Del. Super. July 29, 1985) ("The general rule is that loss of future profits must be established by substantial evidence and can't be left to speculation."); *Re v. Gannett Co., Inc.*, 480 A.2d 662, 668 (Del. Super. 1984) ("Courts have required that loss of future profits be established by substantial evidence and not be left to speculation.").

In other words, Delaware law does not allow recovery for damages that "are merely speculative or conjectural." *See Tridon Industries, Inc. v. Willis Chevrolet, Inc.*, 2014 WL 1338678, * 4-5 (D. Del. April 1, 2014), quoting *Henne v. Balick*, 146 A.2d 394, 396 (Del. 1958); *see also Donald M. Durkin Contracting, Inc. v. City of Newark*, 2008 WL 952984, *6 (D. Del. April 9, 2008) (granting defendant's JMOL on contract damages because Delaware law does not entitle plaintiff to breach of contract damages exceeding plaintiff's expectation interest).

Here, the APA explicitly provides Kyphon with unfettered discretion to stop making sales of the Natrix System or any related product. Pabban did not establish through any competent evidence that Kyphon has waived this contractual right or committed to making sales through the end of December 2015, rendering the jury's award of future lost royalties speculative as a matter of law.

*Bonanza Restaurant Co. v. Wink*, 2012 WL 1415512 (Del. Super. April 12, 2012), is instructive. In that case, the court analyzed a request for lost future

- 7 -

royalty fees in connection with a terminated franchise agreement. In finding no right to such future fees, the court reasoned that such future profits are inherently speculative and uncertain: "No sales, no fees. By definition royalty fees cease when a franchise ceases operation. [Plaintiff] is a sophisticated business entity that could have provided for recovery of lost future royalties in the Franchise Agreements if it had desired to do so." *Id.* at \*4.

Here, the per unit royalty provision in the APA is explicitly identified as "contingent." [Ex. 31 at § 2.4.6.] The APA also provides that Kyphon "shall have no obligation to achieve any of the events that would give rise to any the Milestone Payments in any period of time or any Additional Consideration and any and all decisions regarding the level of efforts or the amount of resources which [Kyphon] or its Affiliates shall cause to be expended with respect to the design, development, production, marketing or sales of the Natrix System . . . shall be in the sole and absolute discretion of [Kyphon] and its Affiliates without any express or implied obligation or liability to any party, including [Pabban]." [Ex. 31 at § 2.7.] In other words, the APA gives Kyphon unfettered discretion to stop making sales of the device at any time. Accordingly, the right to future royalty payments is entirely contingent on Kyphon's decision to make future sales, which is fully within Kyphon's discretion pursuant to the APA.

Pabban introduced no evidence that Kyphon has waived its rights under Section 2.7 of the APA or will continue to make sales of the device following trial, let alone through the end of 2015. Specifically, no one from Kyphon testified that it will continue to make sales of the device. Rather, consistent with the APA, Kyphon continues to have discretion to decline to market and sell the device at any time. To convince the Court to deny Kyphon's Rule 50(a) motion on this issue, Pabban pointed to Dr. Kennedy's testimony, but Dr. Kennedy did not offer evidence sufficient to satisfy Pabban's burden. Specifically, Dr. Kennedy confirmed that he has no idea what Kyphon will do in future years:

| | |
|---|---|
| Q. | But you're a financial expert. You know they're going to continue to make sales beyond 2014, do you not, Dr. Kennedy? |
| A. | **No. I don't know what they're going to offer. I don't know what the resolution of this litigation will be or what they'll do in the future**. It's a reasonable assumption they would, but I don't know. |

[Trial Tr. at 985:20-25 (emphasis added)]

In other words, even if the question was whether it was "reasonable" to assume sales through the end of 2015, which is the wrong standard pursuant to Section 2.7 of the APA, there was no evidence introduced by Pabban to satisfy this standard. As explained in *Henne*, the "burden is on the plaintiff to furnish such proof. If [the plaintiff] fails in this respect, the [court] cannot supply the omission by speculation or conjecture." *Henne*, 146 A.2d at 396. Accordingly, judgment as a matter of law should be entered in Kyphon's favor with respect to the future royalties awarded to Pabban.[2]

## C. If The Court Does Not Grant JMOL, A New Trial Should Be Ordered

Alternatively, the Court may order a new trial on the question of Pabban's satisfaction of its warranty obligations and alleged future damages. Fed. R. Civ. Proc. 59(a). It is appropriate to grant a new trial "'if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007), quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000); *see also In re U.S. Financial Sec. Litigation,* 609 F.2d 411, 432 (9th Cir. 1979) ("A new trial may be granted under Fed.R.Civ.P. 59 when the

---

[2] According to Pabban's damages expert, this amount was approximately $902,000.

verdict is against the weight of the evidence, the damages are excessive, or the trial was unfair for some reason.").

In ruling on a new trial motion based on insufficiency of the evidence, the court must weigh the evidence and assess for itself the credibility of witnesses. *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). A trial judge has a duty to set aside a verdict, even if it is supported by substantial evidence, if the judge "is left with the definite and firm conviction that a mistake has been committed by the jury." *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371–72 (9th Cir. 1987). "The trial judge is ultimately responsible for the conduct of the litigation, and is also responsible for ensuring that a party is not a victim of a miscarriage of justice." *Murphy*, 914 F.2d at 187 (affirming district court's new trial order).

As discussed above, the evidence presented at trial demonstrates that Pabban failed to satisfy the warranty provisions of the APA regarding the merchantability of the device at the time the APA was signed. Likewise, there was no evidence supporting the award of future damages. The clear weight of evidence defies the jury's verdict against Kyphon and does not support the jury's excessive monetary award. Accordingly, a new trial on these issues is warranted.

## IV.   CONCLUSION

As set forth above, the evidence does not support the verdict on Pabban's breach of contract claim or its claim for future royalties. As such, the Court should grant judgment as a matter of law in Kyphon's favor or, in the alternative, order a new trial.

DATED:  June 2, 2014.                REED SMITH LLP

By   /s/ Michael Garabed
James L. Sanders
Stuart A. Shanus
Michael A. Garabed
Attorneys for Defendants and
Counterclaimants